**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Diana Carter, | ) | CASE NO. 1:06 CV 2137 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| First Energy Nuclear Operating | ) | <u>Memorandum of Opinion and Order</u> |
| Company, | ) | |
| Defendant. | ) | |

## <u>Introduction</u>

This matter is before the Court upon defendant's Motion for Summary Judgment (Doc. 13).  This is an employment case alleging discrimination based on plaintiff's disability. For the following reasons, the motion is GRANTED.

## <u>Facts</u>

Plaintiff, Diana Carter, filed this Complaint in the Lake County Court of Common Pleas against defendant, FirstEnergy Nuclear Operating Company (hereafter, defendant or FENOC).  The case was thereafter removed to this Court on the basis of federal question jurisdiction.

1

Plaintiff began her employment with FENOC at the Perry Nuclear Power Plant (hereafter, the Perry Plant or Perry) in 1993.  She has worked in the Maintenance Services Department at all relevant times and held the position of a Mechanic's Assistant.  Plaintiff is a member of the Utility Workers of America Union, and her employment at Perry is governed by the Collective Bargaining Agreement (CBA) between FENOC and Local No. 270. (pltf. depo. 11, 13-15, 36, 53-54; Doc. 13 Ex. D).

The Perry Plant has both secured and unsecured areas.  In compliance with regulations issued by the Nuclear Regulatory Commission (NRC), FENOC established "Unescorted Access Requirements," that track and implement the NRC's regulations regarding access to the secured and vital areas of FENOC's nuclear plants. (Doc. 13 Ex. A)  In order to enter the secured areas of the Perry Plant, an employee is required to hold Unescorted Access Clearance. The NRC requires Perry to screen its employees for Unescorted Access Clearance for restricted areas of nuclear power plants for safety and security reasons.  The screening includes a background investigation, drug and alcohol testing, fingerprinting, and a psychological evaluation. (Maureen Gilday-Gulliford aff.).

As a Mechanic's Assistant, plaintiff is required to hold Unescorted Access Clearance to enter the secured areas of the Plant to perform her essential job functions. (Gilday-Gulliford aff.)  A Mechanic's Assistant at Perry may be assigned a wide variety of job duties. (Doc. 13 Ex. E)

Defendant's Employee Attendance Policy requires that employees contact their supervisor as soon as possible in case of illness, provide a doctor's statement explaining the illness when requested by the supervisor, adopt prescribed remedial measures for illness, be

available for reasonable examinations by defendant's representative when requested and regularly report to the supervisor on the medical condition when on extended absence.  (Doc. 13 Ex. F) Employees absent for more than 40 hours due to illness are placed on a Case Management Plan which requires coordination with a member of defendant's Medical Services Department to monitor the employee's illness and communicate with the employee and his physician regarding diagnosis, prognosis and treatment to determine the employee's ability to perform the essential functions of his position.  (Doc. 13 Ex. G)

From October 16, 2000 through January 10, 2001, plaintiff was absent from work 90 hours, which is representative of 17% of available work hours. (Doc. 13 Ex. I; pltf. depo. 103) Plaintiff began a medical leave on October 24, 2003 that lasted approximately several weeks. (Doc. 13 Ex. J; pltf. depo. 112)   As a result of this absence, defendant notified plaintiff by letter of November 6, 2003 that she was being placed on a Case Management Plan and was assigned to Amy Gallagher (nka Amy Gilmer), a registered nurse employed by the Perry Health Services Unit (referred to as a Nuclear Nurse). (Doc. 13 Ex. K; pltf. depo. 110) Via the letter, plaintiff was advised, in keeping with FENOC's Extended Absence Policy, that Ms. Gallagher (Gilmer) would coordinate with plaintiff and her physician with regard to her health condition; Ms. Gallagher (Gilmer) would contact plaintiff regularly during her illness to monitor her progress until plaintiff could "perform [her] normal job responsibilities"; and a Form 0009-0 was required for each physician's visit until the time plaintiff could return to work without restrictions.  (Doc. 13 Ex. K)  Plaintiff admits that she did not always provide a Form 0009-0 every time she went to her physician. (pltf. depo. 111)

By letter of November 14, 2003, Perry Human Resources personnel advised plaintiff

3

that her short-term disability benefits (in effect since October 24, 2003) were being suspended

based on plaintiff's failure to provide the necessary documentation that had been "repeatedly

requested."  (Doc. 13 Ex. J )  In December 2003, plaintiff's supervisors conducted a

counseling session with plaintiff regarding her failure to follow policies and contract

requirements regarding the reporting of sick time benefits. (Doc. 13 Ex. L) Plaintiff

subsequently provided the necessary paperwork from her physician to document her illness

for this extended absence. Plaintiff's sick pay benefits were reinstated.  (pltf. depo. 116-117)

On November 15, 2004, plaintiff began another short-term disability leave

due to illness, and again did not provide defendant with the paperwork necessary to

document her need for an extended illness absence. (Doc. 13 Ex. M; pltf. depo. 124) By letter

of December 3, 2004, Daniel Gallagher, Perry Plant Superintendent, advised plaintiff:

> On November 15, 2004, you reported that you could not work as a result of an illness. Based on an earlier circumstance, you were aware that you would need to provide the Company with the appropriate medical documentation in order to receive sick pay benefits.  During the week of November 22, you did not call in as required and attempts were made to contact you and obtain this information.  However, you failed to return calls.
>
> On December 22, 2003, a letter was sent informing you that you would not be entitled to sick pay benefits until you provided reasonable evidence of your inability to work due to sickness or injury.  During this recent absence, you did not provide the required medical information.  As a result, you are not entitled to sick pay benefits for this absence beginning in November.
>
> Based upon your past attendance record and the requirements of the collective bargaining agreement, your current absence is unexcused and your employment status is suspended, without pay, pending further investigation of this matter.  You are directed to appear at an investigation meeting, with Union representation, on December 8, 2004... Failure to do so may result in disciplinary action up to and including termination of employment.

(Doc. 13 Ex. M)  Plaintiff did not provide defendant with documentation of her illness until

December 14, 2004.  (Doc. 13 Ex. O)

  During a telephone call to plaintiff's home on November 22, 2004, defendant learned from a young man who answered that telephone that plaintiff had been married on November 17, 2004 and "would not be home until Friday."  (*Id.*)

  Plaintiff began treatment with a specialist, Dr. Hazel Veloso, in January 2005, who diagnosed her with Irritable Bowel Syndrome (IBS). (Doc. 13 Ex. P) Plaintiff returned to work on January 28, 2005 with the restriction that she be close to a restroom based upon the diagnosis of IBS.  (Doc. 13 Exs. O and Q)

  Pursuant to defendant's Human Resources Letter 601, Administrative Procedures for all Employees with Extended Injuries or Illnesses, an employee who experiences a health condition that affects his ability to perform essential elements of his position may be placed on modified or restricted duty while being monitored by defendant. (Doc. 13 Ex. G) Letter 601 states in part:

> the use of modified/restricted work should be on a temporary basis and, therefore, should not exceed 150 calendar days, or the period specified in any applicable collective bargaining agreement, without review by the Medical Review Committee.

(*Id.*)  Plaintiff was placed on restricted duty as of January 28, 2005.

  Because plaintiff had to be in close proximity to a restroom, her health condition prevented her from entering the secured areas of the Perry Plant because there are no restrooms inside the Plant.  (Daniel Gallager depo. 28; pltf. depo. 68) As a result, plaintiff was assigned as the attendant to the tool crib located in the unsecured area of the Plant. (Gallagher depo. 28).   Robert Fundis is the tool crib supervisor and plaintiff's immediate supervisor. (Fundis depo. 8) Fundis concurred that plaintiff's restriction of being close to a restroom

limited her to being in the tool room outside the radiological area because there are no restrooms in the radiological area.  (*Id.* 36-38) Prior to her restriction of being near a restroom, plaintiff had worked both the inside and outside tool cribs.  (pltf. depo. 152)

On February 3, 2005, Plant Superintendent Gallagher issued a memorandum to plaintiff regarding her excessive absences and tardiness over the preceding several years, and her failure to appropriately report her absences and to fully cooperate with Medical Services to implement her Case Management.  The memorandum attempted to "clearly define expectations regarding [plaintiff's] responsibilities to report off from work in the future." (Doc. 13 Ex. R)

Superintendent Gallagher also sent plaintiff a letter dated February 22, 2005 concerning plaintiff's failure to follow FENOC's policies relative to her extended absences, reporting off and Case Management procedures. (*Id.* Ex. S)  This letter recounted plaintiff's prior failures to adequately report off and her failure to cooperate with Medical Services regarding her Case Management Plan.  The letter also stated:

> As an employee, you are required to possess normal health, the use of the senses, and the strength, endurance and other physical characteristics necessary to perform the essential functions of your job.  Regular attendance is an essential function of your job.  By your record, you are not meeting this requirement. ...
>
> You are expected to be here to perform your job.  Therefore, you are required to see a physician on the first day of <u>any</u> absence due to illness and provide a doctor's certificate with diagnosis, prognosis, work restrictions and medications.  Management or Medical Services as required will review this documentation.  If you are unable to see your physician on the first day of an absence, you must notify the Company immediately at which time a decision will be made as to when you should report for work.  In addition, you may be required to be examined by a Company doctor.
>
> Your record must show significant and sustained improvement.  Continued failure to report absence from work without reasonable excuse or justification will result in disciplinary actions up to and including termination.

6

(*Id.*)

While plaintiff was placed on restricted duty on January 28, 2005, she did not

voluntarily seek medical care or treatment for it again until June 2005, after Nuclear Nurse

Amy Glimer advised plaintiff in May 2005 that her 150 days was close to expiration. (Doc. 13

Ex. P; pltf. depo. 93-94) Gilmer avers in pertinent part:

> In the years for which I monitored [plaintiff's] Case Management, I observed and
> documented numerous instances where she failed to provide necessary and/or
> complete paperwork, did not respond to my phone calls, and provided inconsistent
> information regarding medications and health treatment she was or was not receiving.
> Also, for extended periods of time she would not see her doctor for her health
> condition and did not follow her doctor's advice regarding treatment.  I documented
> all of these issues in my file as they occurred.
>
> In May of 2005, [plaintiff] had been on restricted duty for more than three months.  I
> contacted her in the course of her Case Management to inquire about her treatment
> and prognosis. I reminded her at that time that FENOC has a policy that modified duty
> is limited to 150 days.  She advised me at that time that she had not seen her doctor
> since January of 2005.  I recommended to her that she see her doctor with the goal of
> improving her health condition.  As a registered nurse I was and am knowledgeable of
> various potential medications and lifestyle changes that can be utilized to alleviate
> and/or remedy the health condition for which [plaintiff] was placed on modified duty.
>
> After this conversation with [plaintiff], I communicated with her supervisor, Dan
> Gallagher, which I am required by FENOC policy to do.  I advised Dan that it was my
> recommendation that [plaintiff] take short-term disability leave.  I made this
> recommendation because [plaintiff's] condition had not improved in the years she had
> been in Case Management and a leave of absence would give her the opportunity to
> address and focus on improving her health.

(Gilmer aff.)

Plaintiff began a short-term disability leave on July 15, 2005. (pltf. depo. 155)

Plaintiff learned of the leave via a memorandum issued to her by Daniel Gallagher.  Plaintiff

"was not in agreement as far as being put on the short-term disability" and requested that a

grievance be filed.  (pltf. depo. 157-158) Gallagher's memorandum states in part:

7

> ... we have determined that you have exceeded the 150 days for temporary
> modified/restricted work and may not be following all of the remedial actions as
> prescribed by your doctor. ...  As such, please be advised that as of today, 7/15/05, we
> are placing you on short-term disability. ...

(Doc. 14 Ex. E)

By letter of October 4, 2005, Dr. Paul Hanahan, Perry's then Medical Review Officer, requested plaintiff's medical records from Dr. Veloso, to determine whether plaintiff had reached Maximal Medical Improvement (MMI) which would result in plaintiff's restrictions being considered permanent in nature.  (Doc. 13 Ex. U)  Plaintiff wrote a letter to Dr. Veloso stating that she did not consent to the release of her medical information.  (*Id.* Ex. V) Dr. Hanahan sent a second letter to Dr. Veloso on November 4, 2005, requesting the records.  (*Id.* Ex. W)

Plaintiff's physician cleared her to return to work on November 16, 2005 without restriction.  (Doc. 13 Ex. P; Doc. 14 Ex. I) By letter of December 1, 2005, Superintendent Gallagher advised plaintiff that she still did not have the medical information from her physician necessary to comply with the collective bargaining agreement or Perry's policies. Due to her refusal to provide the requested information, plaintiff was informed that she was suspended without pay pending further investigation.  (*Id.* Ex. X)  Plaintiff provided the documentation to defendant on December 7, 2005 and, consequently, was cleared to return to work without restriction on December 15, 2005.  (*Id.* Ex. Y) On December 1, 2005, plaintiff filed a charge of discrimination with the EEOC and the Ohio Civil Rights Commission alleging discrimination for being placed on short-term disability and for the suspension of her sick pay benefits. (Doc. 13 Ex. Z)

In a December 20, 2005 memorandum, Nurse Glimer noted that although her doctor

8

had recommended since June that plaintiff try Probiotics, an over the counter medication, to alleviate her condition, plaintiff did not begin using this medication until November 2005. (Doc. 13 Ex. BB)  Plaintiff's IBS symptoms were alleviated once she began taking that medication. (*Id.* Ex. P)

Because Plaintiff had been on a leave of absence, it was necessary for her to regain Unescorted Access Clearance to the secure and vital areas of the Perry Plant in order to return to work. (Gulliford depo. 16-18 ) To obtain clearance, plaintiff was required to participate in an access interview with Maureen Gulliford, the Perry Access Supervisor.  Plaintiff refused to participate in the January 5, 2006 interview after she had failed to appear at an earlier scheduled interview.  (Doc. 13 Ex. AA)

 After learning in November 2005 that plaintiff would be returning to work without restriction, in the course of plaintiff's screening for reinstatement of security clearance, Superintendent Gallagher advised Maureen Gulliford of various issues and instances of plaintiff's non-compliance with FENOC policies and procedures.  (Gallagher aff.)  Nuclear Nurse Gilmer separately advised Gulliford of the behavioral observations she had made of plaintiff through the Case Management Plan.  (Gilmer aff.)  In particular, Gulliford was informed of instances where it had been determined that plaintiff violated company policy by not following personnel procedures, had not responded to inquiries regarding her health condition and/or her whereabouts, provided discrepant information to FENOC personnel and had not provided documentation in support of her illness as requested and required by supervisors, management and FENOC policy.  (Gulliford aff.)

Depending on the circumstances, an employee absent from service for less than one

9

year may be referred for psychological evaluation for reinstatement of Unescorted Access Clearance. Where there is a question as to the person's suitability for security clearance, psychological evaluation may be deemed necessary.  (Gulliford depo. 18-19)  Based on the information presented to her, Gulliford determined that, in accordance with NRC regulations, plaintiff would be referred for a psychological evaluation to determine her suitability to hold unescorted access. (Doc. 13 Ex. CC; Gulliford depo. 34-35) Gulliford avers that the information provided to her regarding plaintiff's "pattern of behavior raised concerns as to her trustworthiness and reliability as it relates [to] holding unescorted access authorization." (Gulliford aff.)

FENOC retains psychologists specially trained in NRC regulations and nuclear environments to conduct psychological assessments of employees for purposes of Unescorted Access Clearance. (Gulliford depo. 50)   Plaintiff was referred to the psychologist then assigned to the Perry Plant, Willie S. Williams. (*Id.* at 36)  Dr. Williams evaluated Plaintiff on January 26, 2006 and deemed her unacceptable for Unescorted Access Clearance.  Dr. Williams stated that plaintiff

> displayed discrepancies in reporting medical information which calls into question both her honesty and reliability for working at a nuclear power facility.  Her failure to report requested information in a timely manner suggests her decision making ability may be impaired.  The psychological test results suggest that she has a tendency to be defensive and unwilling to reveal much about herself. ...

(Doc. 13 Ex. DD) Dr. Williams evaluated plaintiff a second time, on February 10, 2006, and deemed her unacceptable for Unescorted Access Clearance. (*Id.* EE) Accordingly, plaintiff was denied reinstatement of Unescorted Access Clearance.  Defendant did not have the discretion to override Williams's determination.  (Gulliford depo. 48-49)

10

By letter of March 6, 2006, plaintiff instituted an appeal of the denial of her Unescorted Access Clearance. Therein, she also advised that she intended to seek an independent evaluation by Dr. Donald Weinstein.  (Doc. 13 Ex.FF)

In August 2006, plaintiff filed her Complaint against defendant alleging that her IBS constitutes a disability and that defendant refused to allow her to return to work after she had been cleared by her doctor to do so.

By letter of September 19, 2006, Gulliford informed plaintiff that despite requesting copies of her medical records from Perry which were provided, plaintiff had not submitted the results of her independent evaluation.   Plaintiff was further advised that Dr. Williams had recommended a re-evaluation in six months.  (*Id.* Ex. GG) At some point, Dr Weinstein apparently stated that plaintiff should not be denied unescorted access, but his report is not submitted.  (Gulliford depo.)  Dr. Williams conducted the re-evaluation.  (*Id.* Ex. HH) Defendant asserts that he continued to find plaintiff unacceptable for Unescorted Access Clearance, but the evidence is not submitted.

In January 2007, defendant referred plaintiff to another psychologist, Dr. Candeletti, who found plaintiff acceptable for Unescorted Access Clearance. (Gulliford depo. 44) By letter of February 23, 2007, defendant notified plaintiff that the psychological evaluation demonstrated that she was psychologically acceptable for reinstatement of plaintiff's unescorted access to the Plant.  Plaintiff was, accordingly, returned to work.  (Doc. 14 Ex. M)

Plaintiff's Complaint sets forth five claims: Count One alleges a violation of the Americans with Disabilities Act (ADA).  Count Two alleges a violation of Ohio's disability

statute.  Count Three alleges retaliation for taking FMLA leave.  Count Four alleges interference with FMLA rights.  Count Five alleges invasion of privacy.

This matter is now before the Court upon defendant's Motion for Summary Judgment.


**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its resolution will affect the outcome of the lawsuit."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party.  Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of [his] pleadings, but [his response], by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is genuine issue for trial.  If he does not respond, summary judgment, if appropriate, shall be entered against him.

12

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party.  *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985).  However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury."  *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

### Discussion

### (1) Disability claims

Count One alleges that defendant terminated plaintiff's employment and/or refused to accommodate her disability and/or perceived her as being disabled in violation of the ADA. Plaintiff also alleges that defendant failed to engage in an interactive process with plaintiff to discuss a reasonable accommodation.  Count Two alleges a violation of Ohio's disability discrimination statute.

Plaintiff argues that defendant failed to accommodate her disability when, despite

13

being accommodated since January 2005 by working in close proximity to a restroom, defendant discontinued the accommodation and forced plaintiff to take a short-term disability leave in July 2005.  *See* Doc. 14 at 1 ("These claims all stem from the involuntary leave of absence which defendant forced plaintiff to take in July of 2005, rather than continuing her previously granted accommodation of working near a restroom.")

The ADA prohibits discrimination because of disability against "a qualified individual with a disability," 42 U.S.C. § 12112(a), and defines "discrimination" to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *Id*. § 12112(b)(5)(A).

To establish a violation under the ADA,  plaintiff must prove that 1) she has a disability, (2) she is otherwise qualified for the job and (3) defendant either refused to make a reasonable accommodation for her disability or made an adverse employment decision regarding her solely because of her disability.  *Knapp v. City of Columbus,*192 Fed.Appx. 323 (6th Cir. 2006) (citations omitted)   Plaintiff "must introduce evidence supporting each element of the prima facie case if the action is to survive summary judgment."  *Id.*

Because Ohio's disability discrimination statute and the ADA employ the same analysis, the foregoing analysis applies to plaintiff's discrimination claim under Ohio Revised Code § 4112.02, as well as his claim under the ADA. *Kleiber v. Honda of America Mfg., Inc*., 485 F.3d 862 (6th Cir. 2007) (citing *Brenneman v. MedCentral Health Sys*., 366 F.3d 412, 418 (6th Cir.2004) ).

Defendant argues that plaintiff fails to demonstrate the third element of her claim, namely that defendant either refused to make a reasonable accommodation for her disability

or made an adverse employment decision regarding her solely because of her disability.

**(a) adverse employment action**

Defendant first asserts that plaintiff did not experience an adverse employment action. The Sixth Circuit defines an adverse employment action as one that results in a "materially adverse change in the terms and conditions of plaintiff's employment." *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir.1999).   A "materially adverse" change in the terms or conditions of employment is typically characterized "by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.*

Defendant asserts that plaintiff's placement on short-term disability from July 15, 2005 through November 20, 2005 is not an adverse employment action because plaintiff testified that she received her full pay and benefits up to November 14, 2005.  (pltf. depo. 155-156)

Plaintiff asserts that although she was paid her regular salary during her involuntary leave of absence, she did not have the opportunity to earn overtime during this period.  (pltf. depo. 248-249)   For the following reasons, the Court does not find that plaintiff suffered an adverse employment action.

Plaintiff relies on *Jones v. City of Allen Park,* 167 Fed. Appx. 398 (6th Cir. 2006). In *Jones,* plaintiff had alleged retaliation for his testimony in a fellow police officer's discrimination suit.  At one point, the police department engaged in tobacco stings which allowed participating officers to collect overtime pay.  Because the job was not properly posted, plaintiff was excluded from the overtime opportunity.  The court stated, "The lost

15

opportunity to sign up for overtime is a tangible employment action sufficient to satisfy the second prong of [plaintiff's] prima facie case."  Nonetheless, plaintiff was unable to show causation because the evidence showed that the person responsible did not post the job. There was no evidence that the police chief, who allegedly was the retaliator, purposely did not post it, that it was his decision not to do so, or that the motivation for not posting it was to deprive plaintiff of the ability to work overtime.  Here, unlike in *Jones,* plaintiff does not even show a specific opportunity to earn overtime.  *See also Martin v. General Electric Company*, 187 Fed. Appx. 553 (6th Cir. 2006) (Plaintiff failed to demonstrate that she was entitled to overtime.)  Moreover, as discussed above, defendant has submitted evidence to show that, during her leave of absence, plaintiff failed to take steps to alleviate her condition until November 2005 or shortly before her benefits were due to decrease.

Additionally, plaintiff asserts that during the 16 month period wherein she had to seek reinstatement of her unescorted access, she was not paid a salary.   Plaintiff asserts that she would not have to have sought the reinstatement had defendant not wrongly forced her to take the short-term disability.  As discussed below, however, plaintiff fails to show that the short-term disability leave was not a reasonable accommodation or that defendant violated disability discrimination laws in instructing plaintiff to take the leave.  Accordingly, because the leave was not wrongful, defendant was justified in making plaintiff seek reinstatement of her unescorted access.

Defendant also contends that plaintiff cannot establish that she suffered an adverse employment action based on her claimed disability because plaintiff was unable to return to work until March 2007 not because of her I.B.S., but because Dr. Williams found her

16

unacceptable for Unescorted Access Clearance.  While her doctor had cleared her to return to work without restriction, plaintiff was required, as a Mechanic's Assistant, to enter the secured areas of the Plant. She could not do so given Dr. Williams' determination.  As such, defendant asserts, plaintiff's inability to return to work for the period of November 15, 2006 to March 1, 2007 was not attributable to her physical condition.

Defendant refers to *Mathieson v. American Electric Power*, 2002 U.S. Dist. LEXIS 6560 (W.D. Mich. January 14, 2002), wherein plaintiff was terminated after his medical review determined that plaintiff was not cleared for unescorted access to the nuclear power plant based on plaintiff's medications.  The court concluded that while plaintiff suffered from a disability, his termination for failure to meet the fitness-for-duty program required by the NRC was not a violation of the ADA. The court determined that defendant did not choose to implement a fitness-for duty program, nor did it choose the components of the program. Both were dictated by the NRC regulations. The plaintiff did not meet the requirements of the legally-mandated fitness-for duty program, and the defendant was not free to ignore the regulations.

Defendant correctly points out that the Nuclear Regulatory Commission (NRC) requires that a nuclear facility, such as Perry, adopt a "Fitness for Duty" program that prescribes, among other things, the unescorted access requirements for employees to enter the secured and vital areas of the nuclear facility. *See* 10 C.F.R. § 73.56. (requiring nuclear facilities to establish a personnel access authorization program). Consequently, defendant established its "Unescorted Access Requirements."

Plaintiff argues that the period of time within which she sought security reinstatement

is causally connected to her disability because the only reason she was required to have her unescorted access reinstated was because she was forced to take a leave of absence.  Had she been accommodated and continued to work, she would never have had her access denied and Dr. Williams would not have had the opportunity to improperly deny the access.  Thus, plaintiff contends, her loss of income during those months is causally related to her placement on involuntary leave by defendant on July 15, 2005. As discussed above, plaintiff was not wrongfully forced to take the leave of absence.

For the foregoing reasons, plaintiff has not demonstrated an adverse employment action.

**(b) refusal to make a reasonable accommodation**

Defendant next contends that it did not fail to reasonably accommodate plaintiff's claimed disability.  This Court agrees.

Defendant points out that its documentation shows that from November 2003 through November 15, 2005, plaintiff received approximately nine months of medical leave at full pay and benefits despite plaintiff's general failure to attempt to improve her health issues and to provide FENOC with the documentation required to support her illness absences, and took action to comply with defendant's policies only when her benefits were about to expire or it was necessary to reinstate benefits lost due to her lack of documentation and cooperation. (Doc. 13 Ex. O)

Moreover, the Court agrees with defendant's assertion that its determination to place plaintiff on paid short-term disability leave in July 2005, was a reasonable accommodation. In *Trout v. Electronic Data Systems Corp*., 151 Fed. Appx. 390, 399 (6th Cir. 2005), the Sixth

18

Circuit states that an employee is entitled only to a reasonable and effective accommodation, not necessarily to the accommodation of her choosing.  Defendant contends that it placed plaintiff on short-term disability rather than continuing her restricted duty past 150 days given that plaintiff's health condition had not improved at all during the time she was on restricted duty and, further, that it was alleviated while she was on leave.  This was an objectively reasonable accommodation.

Plaintiff disagrees and argues that defendant's decision to stop providing her with the accommodation of allowing her to work in the outside tool room close to a restroom was arbitrary and unjustified after defendant had easily so accommodated plaintiff from the end of January 2005 through July 2005.  For the following reasons, the Court finds plaintiff's argument to be unpersuasive.

Plaintiff contends that defendant is not being forthright in how the decision to place her on short-term disability was made, and it is unclear as to who actually made the decision-whether it was plaintiff's supervisors or the medical services department.  As discussed above, however, defendant's Employee Attendance Policy has strict requirements which must be followed by an employee in case of illness which include providing documentation, responding to certain requests and adopting prescribed remedial measures for the illness. Employees such as plaintiff who are eventually placed on a Case Management Plan are expected to comply with further coordination with defendant. Plaintiff did not always following these requisites.  Additionally, early on during her restricted duty beginning in January 2005, Superintendent Dan Gallagher informed plaintiff by letter of what would be required of her.  Plaintiff did not voluntarily seek medical treatment during this time until

19

after Nurse Gilmer advised plaintiff in May 2005 that her 150 days was close to expiration. Additionally, Gilmer avers that she advised plaintiff's supervisor, Superintendent Dan Gallagher, that it was her recommendation that plaintiff take a short-term disability leave.

Plaintiff also asserts that a review of Human Resources Letter 601, Administrative Procedures for all Employees with Extended Injuries or Illnesses, does not justify defendant's decision to place plaintiff on an involuntary leave.  Plaintiff points to the language in the Letter which states, "Temporary modified/restricted duty is not a reasonable accommodation under the [ADA]."  (Doc. 13 Ex. G) As such, plaintiff contends that defendant's reliance on the Letter is inappropriate.  Additionally, plaintiff points out that Letter 601 states that at the end of the 150 days the need for additional accommodation is to be reviewed by the medical review committee, not that restrictions beyond 150 days are absolutely prohibited, and there is no evidence that defendant undertook such a review. (*Id.* ) Regardless, as discussed herein, defendant was not required to continue plaintiff on restricted duty especially given that she did not have a record of endeavoring to better her condition and her condition did not improve during that time.  Moreover, the job in the outside tool crib was "probably" considered one of the "better jobs." (Daniel Gallagher depo. 30)

Finally, plaintiff points out that Daniel Gallagher acknowledged at deposition that other employees have been allowed to work on restricted duty beyond 150 days.  (Gallagher depo. 33)  Plaintiff does not dispute, however, that a Maintenance Services employee who has been on  restricted duty beyond 150 days has a condition, unlike plaintiff's, that "will never get better."  (Gilmer depo. 18; Gilmer aff. ¶ 5)

Nor, plaintiff asserts, can defendant cite to any hardship it suffered as a result of this

20

accommodation, and plaintiff's supervisor acknowledged that this accommodation had not had any affect on the operation of the department or the assignment of work. (Fundis depo. 39). Nonetheless, the evidence shows that defendant chose a reasonable accommodation by placing plaintiff on the short-term leave (with pay) because her condition was not getting better.  Defendant was entitled to chose this alternative accommodation rather than indefinitely continuing plaintiff on restricted duty- although the latter would have been plaintiff's first choice.

For these reasons, plaintiff does not show that defendant failed to reasonably accommodate her.

**(c) whether plaintiff was suspended based on a disability**

Defendant argues that plaintiff cannot show that she was discharged due to her physical condition because it was only when Dr. Williams deemed her unacceptable for Unescorted Access Clearance that her employment was suspended.  Moreover, defendant contends that plaintiff was referred to Dr. Williams because of her behavior, not her health condition.

Plaintiff again contends that Dr. Williams undertook his review only because plaintiff's unescorted access had lapsed due to the forced involuntary leave.   Additionally, plaintiff asserts that Dr. Williams's decision was ultimately determined to be erroneous by Drs. Weinstein and Candeletti.

As discussed above, plaintiff's argument fails because defendant did not wrongfully place plaintiff on the short-term leave.

**(d) pretext**

21

Defendant asserts that it has stated a legitimate, non-discriminatory reason for its actions.  Namely, plaintiff was placed on short-term disability leave in an effort to alleviate her health condition and she was referred to Dr. Williams to ensure the safety and security of the Plant, and not due to her IBS.

Plaintiff does not address pretext and, therefore, fails to raise as issue of fact.

For the foregoing reasons, summary judgment is warranted on Counts One and Two.

**(2) Retaliation**

Plaintiff alleges that she was retaliated against for taking FMLA leave.  The Court applies the *McDonnell Douglas* burden-shifting analysis to retaliation claims under the FMLA. *Edgar v. JAC Products, Inc.,* 443 F.3d 501 (6th Cir. 2006) (citing *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 313-16 (6th Cir.2001).  To establish a prima facie case, plaintiff must show that (1) she availed herself of a protected right under the FMLA, (2) she suffered an adverse employment action and (3) that there was a causal connection between the exercise of her rights under the FMLA and the adverse employment action.  *Id.*  If plaintiff satisfies these three requirements, the burden shifts to the employer to proffer a legitimate, nondiscriminatory rationale for discharging plaintiff.  *Id.*

Again, defendant asserts that the evidence demonstrates that the sole reason plaintiff was not reinstated in November, 2005 was her inability to obtain Unescorted Access Clearance after concerns had been raised about her. As such, plaintiff cannot show a causal connection.  Nor, defendant asserts, does plaintiff show an adverse employment action, as discussed above.

Plaintiff contends that defendant discontinued the restroom accommodation and

22

placed her on a leave of absence in retaliation for plaintiff having taken a leave in late 2004 and/or requesting the accommodation upon her return to work.  Again, plaintiff asserts that all of her damages stem from the unlawful unilateral decision to place plaintiff on the involuntary leave in July 2005 which decision is unsupported by the record and for which defendant offers no rational explanation.  As discussed herein, the evidence shows that before her leave plaintiff had taken extended absences and worked on restricted duty without improvement to her treatable health condition.  Again, plaintiff cannot show, at a minimum, that she suffered an adverse employment action.  Having failed to demonstrate a prima facie case, plaintiff's retaliation claim fails.

Summary judgment on Count Three is appropriate.

**(3) Interference with FMLA rights and invasion of privacy**

Plaintiff appears to be abandoning both of these claims (Counts Four and Five).  *See* Doc. 14 at 15.  Summary judgment is, therefore, appropriate for the reasons stated by defendant.

**Conclusion**

For these reasons, defendant's Motion for Summary Judgment is granted.

IT IS SO ORDERED.


/s/Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Date:   8/09/07

23